UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

STANLEY DUDEK,

                         Plaintiff,

                                                    **MEMORANDUM & ORDER**

           -against-                                12-CV-1193 (PKC)


NASSAU COUNTY SHERIFF'S DEPARTMENT,
*et al.*,

                         Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Stanley Dudek's Complaint[1] principally alleges that the Nassau County Sheriff's Department (the "Sheriff's Department") has an unconstitutional policy of refusing to return a person's firearms, after the court order to confiscate those firearms is no longer in place. (Dkt. No. 18 ("Compl.") ¶¶ 14-16, 19.) The alleged policy requires the person to petition a different court to secure the return of those firearms, once the original court's order directing their seizure has been vacated. (*Id.* ¶¶ 19, 34.) According to Defendants,[2] however, the refusal by the Sheriff's Department to return those firearms is not pursuant to a policy, but rather is the department's way of giving effect to a "glitch" in state law, namely, that the same court which

---

[1]    The "Complaint" refers to Dudek's Second Amended Complaint, filed on March 11, 2013.

[2]    Defendants in this action are (i) Nassau County (the "County"); (ii) the Sheriff's Department, an "administrative arm" of the County; and (iii) Sheriff Michael J. Sposato and his Deputy Sheriffs Robert Mastropieri, Michael Goropeuschek, Christopher Lee, Francis Gorey, and Michael Linn (collectively, the "individual officers"). (Compl. ¶¶ 6-13.) With respect to the individual officers, this Court construes the Complaint as asserting a claim against them in their official *and* personal capacities.

orders the confiscation of those firearms has no legal authority to order that they be returned. (Dkt. No. 41-7 ("Defs. Br."), at 6-8.)

Defendants now move to dismiss the Complaint (the "Motion"), mainly on the basis of its failure to state a claim and the individual officers' absolute or qualified immunity. Defendants' Motion also argues that the Complaint is untimely. This Court GRANTS in part and DENIES in part Defendants' Motion, for the reasons set forth below.

I.    Background

    A. *The Law*

 Under New York's Family Court Act, a person may commence a "family offense proceeding" in the Family Court against their spouse, or another member of their family or household, for committing specific offenses, such as sexual abuse, harassment, or reckless endangerment.[3]  N.Y. Fam. Ct. Act § 812.  This proceeding's purpose is to "attempt[] to stop the violence, end the family disruption and obtain protection." *Id.*

In furtherance of this proceeding, the Family Court "for good cause shown may issue a temporary order of protection," prior to making a final decision. *Id.* § 828.  Section 842-a of the Family Court Act ("Section 842-a") provides that such an order may (i) suspend the spouse's firearm license and (ii) confiscate[4] any firearms that he might have. *Id.* § 842-a.  Although

---

[3]    New York established a "state-wide" Family Court in 1962, when enacting Article VI of the New York State Constitution. *People v. Johnson*, 20 N.Y.2d 220, 222 (1967).  Among other things, Article VI confers on the Family Court jurisdiction over actions involving "crimes and offenses by or against minors or between spouses or between parent and child or between members of the same family or household."  N.Y. Const. art. VI.  The Family Court Act "[i]mplement[s] this constitutional provision" by providing for the institution of family offense proceedings.  *Johnson*, 20 N.Y.2d at 223.

[4]    Despite what Dudek argues in his opposition brief (Dkt. No. 42-1 ("Pl. Br."), at 8), this Court perceives no difference between a temporary order of protection that confiscates firearms

Section 842-a authorizes the Family Court to order the confiscation of those firearms, this provision does not authorize it to order their subsequent return. *See Aloi v. Nassau Cnty. Sheriff's Dep't* ("*Aloi II*"), 800 N.Y.S.2d 873, 874 (Sup. Ct. Nassau Cnty. June 20, 2005) (holding that "[Section 842-a] does not specifically provide authority to the Family Court judge to return the firearms ordered to be seized"); *see also Engel v. Engel*, 807 N.Y.S.2d 383, 384 (2d Dep't 2005) (holding that the Family Court "did not have jurisdiction to issue such a directive"); *Aloi v. Aloi* ("*Aloi I*"), 781 N.Y.S.2d 613, 614 (2d Dep't 2004) (same); *Blauman v. Blauman*, 769 N.Y.S.2d 584, 585 (2d Dep't 2003) (same). As one state court has observed, "it appears to be a legislative oversight in not providing the Family Court judge with continued jurisdiction to determine whether the firearms seized pursuant to that judge's order of protection can be returned to the offending party." *Aloi II*, 800 N.Y.S.2d at 874-75.

## B. The Facts[5]

On November 17, 2008, Dudek's wife, Claudia Dudek ("Claudia"), commenced a family offense proceeding in the Family Court against Dudek. (Compl. ¶ 14; Dkt. No. 41-2–41-6 ("Defs. Exs."), Ex. A, at 1.) The proceeding stemmed from an "alleged domestic incident" involving one of the couple's two children. (Defs. Ex. C ¶ 4.) Upon commencement of the

---

and one that directs their surrender. To direct the surrender of property is to confiscate, or "seize (property) by authority of law." Black's Law Dictionary 340 (9th ed. 2009).

[5]    This Court draws the following facts from (i) the allegations in Dudek's Complaint, which are assumed to be true in deciding the Motion; and (ii) certain exhibits that accompany the parties' briefs and are appropriately considered without converting the Motion into one for summary judgment. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (citing standard in *Brass* with approval as "congruent with that of our sister Circuits").

proceeding, the Family Court issued a temporary order of protection for Claudia and the children

(the "Order"). (Compl. ¶ 14; Defs. Ex. A, at 1.) The Order required Dudek to:

> [s]urrender any and all handguns, pistols, revolvers, rifles, shotguns and any other firearms owned or possessed. Such surrender shall take place immediately, but in no event later than service of this order. [sic] at the appropriate law enforcement agency. Including all hunting weapons that maybe [sic] in basement[.]

(Defs. Ex. A, at 2.) On the same day, the Sheriff's Department served Dudek with the Order at

his residence and simultaneously confiscated his handgun[6] and two longarms,[7] a Remington

Model 7600 rifle and Remington Model 870 shotgun. (Compl. ¶ 15; Dkt. No. 42 ("Pl. Exs."),

Ex. 1, at 1; Pl. Ex. 2, at 1.) Several days later, the licensing section of the Nassau County Police

Department (the "NCPD") notified Dudek that it had suspended his pistol license, pursuant to the

Order. (Compl. ¶ 15; Defs. Ex. C, Ex. 1, at 1.)

On January 6, 2009, the Family Court, citing the fact that Claudia withdrew her petition,

terminated the family offense proceeding and vacated the Order. (Compl. ¶ 16; Defs. Ex. B, at

---

[6]     Handguns are sometimes seen as synonymous with pistols. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 691 (2008) (Breyer, J., dissenting) (representing that one of the challenged restrictions required a license "in order to carry a 'pistol,' *i.e.*, a handgun, anywhere in the District"). Technically, however, handguns are a category of firearms with "short stock[s]" which are "designed to be gripped by one hand"; this category consists of pistols, revolvers, *and* derringers. Marianne W. Zawitz, Dep't of Justice, Guns Used in Crime 2 (1995).

[7]     As compared to handguns, longarms, also referred to as long guns, are a category of firearms with "longer barrels" which are "generally more effective at distances where the handgun is nearly irrelevant." Nicholas J. Johnson, Supply Restrictions at the Margins of Heller & the Abortion Analogue: Stenberg Principles, Assault Weapons, & the Attitudinalist Critique, 60 Hastings L.J. 1285, 1297 n.87 (2009); *see also Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011) (Spatt, J.) ("[The plaintiff] also possessed nine rifles and shotguns, which, because of the length of their barrels, are referred to collectively as 'longarms.'"); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1286 n.13 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("Long guns, such as rifles and shotguns, . . . are generally defined as being at least 16 to 18 inches long."). Longarms are "designed to be fired with two hands." Clayton E. Cramer & Joseph Edward Olson, Pistols, Crime, & Public: Safety in Early America, 44 Willamette L. Rev. 699, 699-700 (2008).

1.)  At that point, the Sheriff's Department did not return any of the firearms that it seized from Dudek, nor did the NCPD reinstate Dudek's pistol license.

On November 30, 2010, Dudek petitioned the Supreme Court of New York, Nassau County ("New York Supreme Court"), pursuant to Article 78 of the New York Civil Practice Law and Rules, for the reinstatement of his pistol license by the NCPD.  (Compl. ¶ 17; Defs. Ex. C ¶ 16.)  On September 19, 2011, the NCPD agreed, by written stipulation, to reinstate Dudek's pistol license and return his handgun.  (Compl. ¶ 18; Pl. Ex. 6, at 1.)

Throughout this time, the Sherriff's Department has "refused to return Dudek's two longarms . . . without a Court Order, despite being asked by Dudek."[8]  (Compl. ¶ 19.)  On January 20, 2012, Dudek wrote to two of the individual officers with the Sherriff's Department, Sheriff Sposato and Deputy Sheriff Mastropieri, requesting the return of his longarms.  (*Id.* ¶ 20.)  No one responded to Dudek's January 20, 2012 request, and his longarms have yet to be returned to him.  (*Id.* ¶¶ 20, 24-27.)

### C.  Procedural History

On March 12, 2012, Dudek commenced this action by filing the first of three complaints. (Dkt. No. 1.)  The original complaint named, as Defendants, the Sheriff's Department, Sheriff Sposato, and Deputy Sheriff Mastropieri, but not the County or any of the other individual officers.  (*Id.* ¶¶ 6-8.)

Defendants named in the original complaint initially moved to dismiss it.  (Dkt No. 7.) At a conference on November 29, 2012, Judge Leonard D. Wexler, who was previously assigned

---

[8]     Neither party explains how or why the NCPD took possession of the handgun that the Sheriff's Department seized from Dudek.  The NCPD, however, is the County's licensing authority for handguns.  *See* N.Y. Penal Law § 265.00(10) (defining "licensing officer," for purposes of pistol licenses pursuant to N.Y. Penal Law § 400.00, as the "commissioner of police of [the County]").

to this action, orally denied the initial motion from the bench. (Order, dated Nov. 29, 2012.) There appears to be no written record of Judge Wexler's reasons for the denial.[9]

On December 3, 2012, Dudek filed the amended complaint. (Dkt. No. 13.) The amended complaint was the same as the original complaint, except that it also named the County as a Defendant. (*Id.* ¶¶ 6-9.)

On March 11, 2013, Dudek filed the second amended, and operative, Complaint. (Compl., at 1.) The only difference between the second amended Complaint and the prior two complaints is that it also names the other individual officers. (*Id.* ¶¶ 6-13.) As with the prior two complaints, the second amended Complaint asserts the following claims against Defendants:

- A claim under 42 U.S.C. § 1983 ("Section 1983 claim") that Defendants allegedly violated Dudek's Fourteenth Amendment right of procedural due process by enacting and enforcing the "policy . . . requiring a Court Order for the return of confiscated longarms" after the Family Court vacated the Order, and thus "fail[ing] [to] provide a procedure or mechanism" for their return, but rather "placing the burden on" Dudek to take his own "affirmative steps" (*id.* ¶¶ 30-35; *see id.* ¶ 1); and

---

[9]     Insofar as the initial motion propounded similar bases for dismissal, such as timeliness, its summary denial by Judge Wexler does not otherwise preclude this Court's consideration of those bases in the Motion before it. *See Dictograph Prods. Co., Inc. v. Sonotone Corp.*, 230 F.2d 131, 134-35 (2d Cir. 1956) (Hand, J.) (holding that the district court was not "so bound to follow [the previous judge's] denial of the defendants' motion for summary judgment that we must reverse [the district court's] summary judgment on the merits without considering whether it was right"); *see also AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V Zapoteca*, 844 F. Supp. 2d 440, 441-42 (S.D.N.Y. 2012) (Preska, C.J.) (holding that the previous judge's denials of two motions for dismissal based on a forum selection clause, including a denial "for the reasons stated on the record at the aforementioned Oral Argument," did not preclude the court from considering the third motion for dismissal on the same basis). As a practical matter, "[Judge Wexler's] order denying [the initial motion] was not appealable, and the consequence of holding that [this Court] [is] forbidden to reconsider it, would be that, if . . . the complaint should have been dismissed on the merits, the defendants would be compelled to suffer the loss of time and money involved in a trial that from the outset was unnecessary." *Dictograph Prods.*, 230 F.2d at 134. Particularly since Judge Wexler did not record his reasons for the denial, this situation does not demand that this Court simply "accept[] . . . without reexamination" that its predecessor rejected, or even intended to reject, those bases for dismissal. *Id.*

- Supplemental state law claims of conversion and replevin, alleging that Defendants unlawfully retained Dudek's longarms "without cause or legal authority," when the Family Court's Order was lifted (*id.* ¶¶ 47-57).

Specifically, with respect to the Section 1983 claim, Dudek requests monetary relief, as well as declaratory and injunctive relief. (*Id.* at 8-9.) The monetary relief requested consists of compensatory damages, as well as punitive damages against Sheriff Sposato and Deputy Sheriff Mastropieri and attorneys' fees.[10] (*Id.*) The declaratory and injunctive relief requested is that this Court (i) declare the no-return policy unconstitutional and (ii) direct the return of the longarms retained under the policy and replace the policy with a "fair and adequate procedure for the handling of firearms in Nassau County that does not violate the due process requirements." (*Id.*)

On July 29, 2013, the parties briefed the Motion presently before this Court, pertaining to the dismissal of the second amended Complaint. (Dkt. Nos. 41-43.)

---

[10] Although Dudek attempts to assert claims for punitive damages and attorneys' fees (Compl. ¶¶ 36-46), this Court construes them as requests for relief and not as claims separate from the Section 1983 claim. *See, e.g.*, *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977) (holding, in a Section 1983 action, that "various prayers for relief, including . . . punitive damages, most certainly do not themselves give rise to separate 'causes of action'"); *Maxineau v. City of N.Y.*, No. 11-CV-2657, 2013 WL 3093912, at *3 (E.D.N.Y. June 18, 2013) (Vitaliano, J.) (noting that "42 U.S.C. § 1988 does not establish a separate cause of action for an alleged violation of a plaintiff's civil rights, but merely provides a means for a prevailing party to recover reasonable attorney's fees in a § 1983 action"); *Carbajal v. Cnty. of Nassau*, 271 F. Supp. 2d 415, 424 (E.D.N.Y. 2003) (Spatt, J.) ("[T]he Court dismisses the claim for punitive damages against the individual defendants because there is no separate claim for punitive damages. Rather, the plaintiff may be entitled to an award of punitive damages against the remaining individual defendants as part of the damages in the remaining claims."); *Ricketts v. Port Auth. of N.Y. & N.J.*, No. 06-CV-3820, 2009 WL 857399, at *5 n.3 (S.D.N.Y. Mar. 30, 2009) ("Requests for punitive damages and attorneys' fees do not create a separates [sic] cause of action [in this civil rights action]."); *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 350 (N.D.N.Y. 2008) ("[P]laintiffs' request for punitive damages is a form of relief sought, not a separate cause of action."), *aff'd*, 331 F. App'x 894 (2d Cir. 2009).

II.   <u>Discussion</u>

        *A.  Standard of Review*

In deciding the Motion, this Court considers whether Dudek's Complaint meets the proper pleading standard under Federal Rule of Civil Procedure 8(a)(2), as illuminated by the Supreme Court's decisions in *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662 (2009) (Kennedy, J.) and *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544 (2007) (Souter, J.). According to *Iqbal*/*Twombly*, the Complaint survives a motion to dismiss, as long as its allegations of "factual matter, accepted as true" sufficiently "raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. At the same time, the Complaint cannot conclusorily recite the elements of a claim. *Ibid.* The factual allegations are sufficient when they allow this Court, at a minimum, to infer that a claim is plausible—an inference which is more than possible, but less than probable—and thereby warrants proceeding with discovery. *Ibid.*

The above principles reinforce a "two-pronged" analysis: this Court should consider (i) whether the Complaint alleges "no more than [legal] conclusions," without the factual allegations to support them; and (ii) whether the "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The analysis draws on this Court's "judicial experience and common sense." *Id.*

        *B.  Section 1983 Claim*

           1.  Failure to State a Claim

               i.  Against the Sheriff's Department

Regardless of whether the factual allegations supporting the Section 1983 claim against the Sheriff's Department are otherwise sufficient, Defendants argue that the department does not have the capacity to be sued. (Defs. Br., at 16-17.) Dudek does not address Defendants'

argument in his opposition brief and has therefore abandoned all objections to it. *See, e.g.*, *Bonilla v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4. 2009) (Chin, J.) (holding that, because the plaintiff "fails to respond to the remaining two arguments" for dismissing certain of the claims, he has "effectively abandoned" those claims); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (per curiam).

Even if Dudek has not abandoned all objections to the argument, this Court still dismisses this claim. New York law specifies the capacity of the Sheriff's Department to be sued. Fed. R. Civ. P. 17(b). Under New York law, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (Spatt, J.) (collecting cases).

Indeed, the Complaint concedes that the Sheriff's Department is an "administrative arm" of the County (Compl. ¶ 6), and, as such, the department cannot be sued separately. *See Melendez v. Nassau Cnty.*, No. 10-CV-2516, 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (Feuerstein, J.) (holding that, because the "Nassau County Sheriff's Department" is an "administrative arm[] of Nassau County," the department is not "suable"); *see also Cole v. Nassau Cnty.*, No. 13-CV-4645, 2013 WL 5652525, at *2 (E.D.N.Y. Oct. 16, 2013) (Seybert, J.) (same); *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 16 n.4 (E.D.N.Y. 2012) (Bianco, J.) (same).

Accordingly, this Court dismisses *with* prejudice the Section 1983 claim against the Sheriff's Department.

ii. Against the County

With respect to the Section 1983 claim against the County (the "*Monell* claim"), Defendants argue that the Sheriff's Department, as the County's administrative arm, was "merely carrying out the mandates of state law" in refusing to return Dudek's longarms. (Defs. Br., at 15; *see* Dkt. No. 43 ("Defs. Reply"), at 3.) According to Defendants, the department was required to retain the longarms until a different court, *i.e.*, the New York Supreme Court, separately ordered their return, as the Family Court lacked the authority to do so upon vacating the Order. (Defs. Br., at 15-16; *see id.* at 6-8; Defs. Reply, at 2-4.) The department's refusal therefore was "not because of any policy, practice or custom promulgated by Nassau County," but rather a "deficiency" in state law. (Defs. Br., at 16; *see* Defs. Reply, at 3.) Dudek responds in part, stating that Defendants "place the blame on" state law when the department was authorized to, and did not as a matter of the County's "policy," return the longarms without an order from another court. (Pl. Br., at 22 & n.8.)

A municipality may be liable under Section 1983 for any "policy or custom" that causes a "deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, 694 (1978) (Brennan, J.). In *Vives v. City of N.Y.*, 524 F.3d 346 (2d Cir. 2008), the Second Circuit considered, for the first time, whether a municipality creates a policy for which it may be liable, where it merely carries out a state law. *Id.* at 351. In this context, the municipality creates such a policy if it makes a "meaningful" and "conscious" choice to carry out the law. *Id.* at 351, 353.

For *Vives* to apply as a limit on a municipality's liability under *Monell*, the threshold question is, does the municipality merely carry out a state law? The answer here is no. The Sheriff's Department refused to return Dudek's longarms, but not because Section 842-a required it to. Section 842-a only authorizes the Family Court to order that a person's firearms

10

be confiscated. *See supra* at Section I.A (collecting cases). Even though Defendants focus on the "legislative glitch" in this provision (Defs. Br., at 6 (quoting *Aloi II*, 800 N.Y.S.2d at 873)), *i.e.*, its failure to authorize the Family Court to direct the return of those firearms, the "glitch" does not otherwise limit the authority of any other entities.[11] Indeed, this provision is silent about who, if not the Family Court, retains the authority to direct that those firearms be returned, once the court has vacated an order for their confiscation. State courts have construed from the silence in this provision that the department and the New York Supreme Court each reserve the independent right to return those firearms. *See Engel*, 807 N.Y.S.2d at 384 ("If the Sheriff denies the appellant's properly supported demand for the return of his firearms, his remedy lies in challenging that denial in the Supreme Court[.]"); *Aloi I*, 781 N.Y.S.2d at 614 (same); *Blauman*, 769 N.Y.S.2d at 585 ("The appellant's remedy is to make an application to the officer that currently has custody of the weapons.").[12]

---

[11]     Defendants cite two other state laws, New York Penal Law § 265.20(a)(1)(f) and New York County Law § 650(1) (Defs. Br., at 15-16), to support the argument that the Sheriff's Department lacks such authority in light of Section 842-a. Neither provision supports this argument.

     The first provision specifies that, once the Family Court orders the seizure of a person's firearms pursuant to Section 842-a, those firearms may be surrendered to the "sheriff of the county in which such person resides," N.Y. Penal Law § 265.20(a)(1)(f). It does not specify that, after such an order has been lifted, the Sheriff's Department may not legally return those firearms.

     The second provision defines the "[g]eneral duties of [the] sheriff," among which are the "duties prescribed by law as an officer of the court," N.Y. County Law § 650(1). The fact that the Sheriff's Department serves as an "officer" of the Family Court, when directed under Section 842-a to confiscate a person's firearms, does not prevent the department from returning those firearms, when it is no longer being directed by the Family Court to retain them.

[12]     "While the . . . Family Court . . . ha[s] the statutory authority to order the surrender of firearms, the[] court[] do[es] not have jurisdiction to order the return of such firearms. . . . Rather the applicant must exhaust administrative remedies, requiring the license holder to demand the return of the firearms from the law enforcement agency which seized them pursuant to the

Defendants therefore may not rely on *Vives*, as a reason to dismiss the *Monell* claim. (Defs. Br., at 16; Defs. Reply, at 3.)  The Sheriff's Department was *not* applying Section 842-a when it refused to return Dudek's longarms.  This provision says nothing about returning the longarms; its silence, though, deprives the Family Court of authority to direct their return, but leaves intact the authority of the department and the New York Supreme Court to do so. *Cf. Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986) (holding that, because "the Sheriff had interpreted the [state] regulation in a manner not necessarily required by its terms," he had adopted a policy for which the County still was liable under *Monell*).

Even if the Sheriff's Department was not merely carrying out a state law, this does not automatically mean that it was acting according to a policy that the County had created, for purposes of the *Monell* claim.  Defendants argue, along those lines, that the County "has not promulgated" such a policy for the department.  (Defs. Reply, at 3.)   Dudek responds in part to this argument, stating that Sheriff Sposato's actions reflect such a policy.  (Pl. Br., at 22.)

To survive a motion to dismiss the *Monell* claim, a policy must be alleged by the Complaint in "sufficient factual detail[]" and not mere "boilerplate allegations."  *Plair v. City of N.Y.*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases).  "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]"  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted).  At the same time, it may suffice to allege an act based on a "single decision," by a policymaker with "final authority to establish municipal policy with

court's directive.  Thereafter, the licensee may seek judicial review of the administrative decision in the Supreme Court."  2 N.Y. L. of Dom. Violence § 6:36 (2012).

respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986) (Brennan, J.).

The Complaint alleges that the Sheriff's Department refused to return Dudek's longarms, and that the department based its refusal on a policy of requiring an order from another court before returning a person's firearms, where those firearms were previously ordered to be confiscated by the Family Court. (Compl. ¶¶ 19, 34.) To support this otherwise "boilerplate" allegation of a no-return policy, the Complaint also alleges that Dudek directed a request for the return of the longarms to Sheriff Sposato and Deputy Sheriff Mastropieri, who declined to address it. (*Id.* ¶¶ 19-26.) The fact that Sheriff Sposato, as an "official policymaker" for the County in the area of "law enforcement practices," failed to consider Dudek's request raises a plausible inference that a no-return policy existed. *Pembaur*, 475 U.S. at 483 n.12; *see also Leather v. Ten Eyck*, 2 F. App'x 145, 149 (2d Cir. 2001) (holding that the county sheriff was "sufficiently a policy-maker for the County for it to be liable for his practices"); *cf. Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (holding that the county sheriff was also "the County's final policymaking official" as to the "existence or enforcement of a code of silence" among his staff).

In addition to the above factual allegation, the inference of a no-return policy is reinforced by Deputy Sheriff Mastropieri's admission in a state court case that "the Sheriff's Department's *general rule* in returning firearms is that the return is made when an order from the court is provided to the Sheriff's Department." *Aloi II*, 800 N.Y.S.2d at 874 (emphasis added). The court in that case concluded that, where a person's firearms were confiscated through a Family Court order since vacated, "it can *reasonably be anticipated* that the officer that has custody of the firearms will refuse to return the firearms without a court order." *Id.* (emphasis

13

added).  Those descriptions of the department's refusal to return—as being a "general rule" and "reasonably . . . anticipated"—demonstrates a broader policy.  *See Buitrago v. City of N.Y.*, No. 11-CV-8551, 2012 WL 6621688, at *8 (S.D.N.Y. Dec. 19, 2012) (Sullivan, J., adopting Report-Recommendation of Freeman, Mag. J.) (noting as dicta that, if the sole issue in a motion to dismiss were whether the plaintiff sufficiently alleged a policy, the district court would "recommend letting Plaintiff's *Monell* claim stand," where "state court decisions . . . may well reflect a systemic problem that arguably constitutes a municipal policy, custom, or practice").  Indeed, Defendants' position in support of the Motion—*i.e.*, that the refusal to return Dudek's longarms was due to a standing interpretation by the department of a "glitch" in state law— further supports the inference that the department maintains a no-return policy with respect to firearms seized based on court orders which are later vacated.

Accordingly, this Court declines to dismiss, and allows discovery on, the *Monell* claim against the County.

### iii. Against the Individual Officers

Dudek also asserts the Section 1983 claim against the individual officers in their official and personal capacities.  At the outset, this Court dismisses *with* prejudice the claim against the individual officers in their official capacities (the "official-capacity claim"), because it is duplicative of the surviving *Monell* claim against the County.  *See, e.g.*, *Orange v. Cnty. of Suffolk*, 830 F. Supp. 701, 707 (E.D.N.Y. 1993) (Wexler, J.) ("[I]t would be redundant to allow the [Section 1983] suit to proceed against both Suffolk County and the individuals in their official capacity."); *see also Ky. v. Graham*, 473 U.S. 159, 165-66 & 167 n.14 (1985) (Marshall, J.) (holding that "[o]fficial-capacity suits, in contrast [with personal-capacity suits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and that "[t]here is no longer a need to bring official-capacity actions against local

14

government officials, for under *Monell*, *supra*, local government units can be sued directly")
(quoting *Monell*, 436 U.S. at 690 n.55).

The fact that Dudek has pleaded the *Monell* claim premised on a policy—which is, as
discussed above, functionally the same as the official-capacity claim—does not otherwise
preclude him from pleading the claim against the individual officers in their personal capacities
(the "personal-capacity claim"). *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (O'Connor, J.)
(rejecting the argument that "state officials may not be held liable in their personal capacity for
actions they take in their official capacity"). As for the personal-capacity claim, seeking
monetary, declaratory, *and* injunctive relief, Defendants argue that this claim should be
dismissed, since the officers were not "personally involved" in allegedly refusing to return
Dudek's longarms and thereby violating his right of procedural due process. (Defs. Br., at 13-
15.) Dudek responds that to dismiss this claim on that basis would be "premature," because,
without the benefit of discovery, "[the officers'] personal involvement or supervisory
responsibilities is still unknown." (Pl. Br., at 20.)

An individual officer's personal involvement in the "constitutional deprivation[]" is a
"prerequisite" to a Section 1983 claim against them. *McKinnon v. Patterson*, 568 F.2d 930, 934
(2d Cir. 1997). As an exception, "courts have pointed out the appropriateness of maintaining
*supervisory* personnel as defendants in lawsuits stating a colorable claim until the plaintiff has
been afforded an opportunity through at least brief discovery to identify the *subordinate* officials
who have personal liability." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (emphasis added)
(collecting cases).

The Complaint in this action fails to contain a single factual allegation that several of
Sheriff Sposato's subordinate officers—Deputy Sheriffs Goropeuschek, Lee, Gorey, and Linn—

were personally involved in the purported violation. Those subordinate officers' names appear nowhere in the section of the Complaint that recites the "Factual Allegations." (Compl. ¶¶ 14-29.) The fact that "discovery has not been commenced" (Pl. Br., at 20) is no excuse for this deficiency. Due to this deficiency, the personal involvement of those subordinate officers appears not only tenuous, but also illusory.

To conclude otherwise would be to countenance plaintiffs in Section 1983 actions to blindly name subordinate officers as defendants and then use discovery to ascertain whether they had any involvement in the disputed conduct. Permitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.*, more than possible and less than probable, should "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79. It would also exact a significant cost on the officers themselves, who would be prematurely dragged into the process. *Cf. Hafer*, 502 U.S. at 27 ("[O]fficers sued in their personal capacity come to court as individuals.").

Accordingly, this Court dismisses *without* prejudice the personal-capacity claim with respect to Deputy Sheriffs Goropeuschek, Lee, Gorey, and Linn. Should discovery reveal that those subordinate officers were personally involved, Dudek may seek to amend the Complaint to re-name them as Defendants. *See Satchell v. Dilworth*, 745 F.2d 781, 786 (2d Cir. 1984) ("[Supervisory personnel] may be restored as defendants in the suit at least for purposes of discovery aimed at identifying those of their subordinates who are personally responsible for the departmental actions complained of."); *see also Davis*, 160 F.3d at 921 (collecting cases). With respect to Sheriff Sposato and Deputy Sheriff Mastropieri, this Court perceives no reason to dismiss this claim for want of personal involvement. The Complaint sufficiently alleges that

Sheriff Sposato and Deputy Sheriff Mastropieri were personally involved in the purported violation. (Compl. ¶¶ 20, 25-26.)

### 2. Immunity from the Monetary Relief Portion of the Personal-Capacity Claim Against the Individual Officers[13]

#### i. Absolute Immunity

Additionally, for the monetary relief portion of the personal-capacity claim, Defendants first argue for dismissal based on absolute immunity, because the individual officers "cannot be held liable for any proper act done in executing a valid court order" by the Family Court to confiscate Dudek's longarms. (Defs. Br., at 8-11.) Dudek's response is that the officers' "judicial function" ceased, and the Order, once vacated, certainly did not allow them to retain, and refuse to return, the longarms "indefinitely." (Pl. Br., at 13-15.)

Absolute immunity protects from liability judges, along with any officers who, in performing "functions" which are an "integral part of the judicial process" and "comparab[le] . . . to those of the judge," are allowed the same protection "derivative of the immunity of judges." *Imbler v. Pachtman*, 424 U.S. 409, 420, 423 n.20, 430 (1976) (Powell, J.) (quotations omitted); *see also Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (Blackmun, J.) ("With this judicial immunity firmly established, the Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process."); *Butz v. Economou*, 438 U.S. 478, 511-13 (1978) (White, J.) (holding that "[j]udges have absolute

---

[13]    "[I]mmunity from damages does not ordinarily bar equitable relief as well." *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975) (White, J.); *see also Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013) ("[Q]ualified immunity does not protect a public official against a claim for declaratory or injunctive relief[.]") (citing *Sudler v. City of N.Y.*, 689 F.3d 159, 177 (2d Cir. 2012) and *Adler v. Pataki*, 185 F.3d 35, 48 (2d Cir. 1999)). The only exception is that absolute immunity may also bar injunctive relief, unless "'declaratory relief was unavailable.'" *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) (quoting Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996)).

immunity not because of their particular location within the Government but because of the special nature of their responsibilities," and that, by extension, officials whose responsibilities are "'functionally comparable' to that of a judge" are also immune). In light of this "functional approach," *Cleavinger*, 474 U.S. at 201 (quotations omitted), the absolute immunity question may be answered on a motion to dismiss, because "the nature of that function is often clear from the face of the complaint." *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005).

Courts have held that an officer with the sheriff's department does perform such a function to which absolute immunity attaches, when "acting pursuant to a court order" that he is "required to execute." *Maldonado v. N.Y. Cnty. Sheriff*, No. 05-CV-8377, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) (collecting cases); *see also Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996) (extending absolute immunity to the county sheriff, and noting that the plaintiff "has not cited any case denying absolute immunity to government officials complying with facially valid court orders, and cases abound to the contrary") (collecting cases); *Henry v. Farmer City State Bank*, 808 F.2d. 1228, 1238-39 (7th Cir. 1986) (dismissing, based on absolute immunity, the claim against the county sheriff, because he "was at all times acting pursuant to an official court order"); *Caporicci v. Nassau Cnty. Police Dep't*, No. 05-CV-5764, 2007 WL 764535, at *7 (E.D.N.Y. Mar. 6, 2007) (Wexler, J.) (holding that the Nassau County sheriff was "mandated by law to carry out orders of the court," and was therefore entitled to absolute immunity for "his execution of a facially valid warrant"); *Bowers v. U.S.*, 931 F. Supp. 2d 358, 367 (D. Conn. 2013) ("Several district courts in this Circuit have found the execution of valid court orders to entitle sheriffs and others to absolute quasi-judicial immunity.") (collecting cases).

Although the individual officers were acting in accordance *with* the Family Court's Order when they initially seized Dudek's longarms, the officers were operating in complete judicial silence, *without* a directive from any court, once the Order was vacated. At that point, the officers stopped performing a judicial function within the scope of the Order, for which they would be absolutely immune, and any decision thereafter to retain the longarms remained in the sound discretion of the Sheriff's Department. *Cf. Levine v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143, at *9 (E.D.N.Y. June 15, 2005) (Hurley, J.) ("[M]ost courts seem to agree that absolute quasi-judicial immunity should not extend to court officers enforcing judicial orders if . . . the court officer exceeds the scope of that order[.]") (collecting cases).

Defendants, however, dispute the fact that the Sheriff's Department had such discretion, when the Order was finally vacated. They argue that, because the Family Court did not have the authority to direct the return of Dudek's longarms after vacating the Order, the individual officers remained bound by the Order, requiring them to retain, but not return, the longarms. (Defs. Br., at 9-10.) Defendants' argument is inapposite, and again conflates the absence of the Family Court's authority to direct the return of a person's firearms with the department's authority to do so, *see supra* at Section II.B.1.ii. Although the Order, when vacated, did not amount to a directive from the Family Court that the officers return the longarms, as the court did not have the authority, it also did not amount to a directive that the officers continue to carry out the Order and retain the longarms. The lifting of the Order left the officers free to return the longarms.

Accordingly, this Court declines to dismiss the monetary relief portion of the personal-capacity claim, based on absolute immunity.

ii. Qualified Immunity

Defendants' second argument for dismissing the monetary relief portion of the personal-capacity claim is that the individual officers are entitled to qualified immunity, as Dudek did not possess, and the officers could not have violated, a "clearly established constitutional right to the return of his longarms after the expiration of a Temporary Order of Protection." (Defs. Br., at 11-13.) In response, Dudek insists that such a right was "clearly established," based on a district court decision and a "trio of Second Circuit cases" cited therein. (Pl. Br., at 15-18 (emphasis omitted).)

Qualified immunity protects from liability any officer "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Powell, J.) (emphasis added). As with absolute immunity, the qualified immunity question may also be answered on a motion to dismiss, as long as the relevant facts "appear[] on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

To determine whether a right was "clearly established" by law at the time, the "relevant, dispositive inquiry" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (Kennedy, J.), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (Alito, J.); *see also Walczyk v. Rio*, 496 F.3d 139, 166 (2d Cir. 2007) (Sotomayor, J., concurring) ("[W]hether a right is clearly established is *the same question* as whether a reasonable officer would have known that the conduct in question was unlawful.") (emphasis in original). This determination principally relies on "whether or not the law was governed by controlling precedent of this Circuit." *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). "Decisions of other circuits also may indicate whether the law was clearly established." *Varrone*

*v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997); *see also Bailey v. Pataki*, 708 F.3d 391, 405 (2d Cir. 2013) ("We have further held that where the law was established in three other circuits and the decisions of our own Court foreshadowed the right, the law was sufficiently 'well established[.]'").

The combination of "pre-existing law" in this and the other Circuits need not show that "the very action in question has previously been held unlawful," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (Scalia, J.), as long as those decisions are based on "facts not distinguishable in a fair way from the facts presented in the case at hand," *Saucier*, 533 U.S. at 202. At the same time, those decisions should show the "contours of the right" allegedly violated, such that the action's unlawfulness would have been "apparent" to a reasonable officer. *Anderson*, 483 U.S. at 640.

The only law of this Circuit to which Dudek cites (Pl. Br., at 17)—a decision from this district and three Second Circuit decisions—is "distinguishable in a fair way" from this action. *Saucier*, 533 U.S. at 202.

In *Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y. 2011) (Spatt, J.), the officers of the NCPD refused to subsequently return, without a "court order directing their return," the plaintiff's longarms, which were confiscated because of the department's "policy of doing so when they believe a person to be dangerous." *Id.* at 185. The district court held that the officers did not afford the plaintiff with adequate "legal process." *Id.* at 184, 191. The basis for the court's holding was that the officers "plac[ed] the burden of going forward" on the plaintiff, who would have been forced to commence a time-consuming proceeding to get his longarms back by an order from the New York Supreme Court. *Id.* at 188-89. The court, however, observed that its holding, and prescribed remedies, would not necessarily apply, where, as in this

action, the officers confiscated the plaintiff's longarms pursuant to a court order that prohibited their possession "by the person from whom they were confiscated." *Id.* at 190.

The three Second Circuit decisions that Dudek contends "clearly established" a constitutional right are discussed in *Razzano*: *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972); *Butler v. Castro*, 896 F.2d 698 (2d Cir. 1990); and *Alexandre v. Cortes*, 140 F.3d 406 (2d Cir. 1998). *See Alexandre*, 140 F.3d at 409-10 (describing *McClendon*, *Butler*, and *Alexandre* as a "string of due process challenges" involving the same issue). Those decisions involved refusals by the New York City police department and its officers to return the plaintiffs' property, confiscated in connection with an arrest and then retained, and at times disposed of, by the department's property clerk in accordance with procedures for arrestees. *Id.* The *McClendon* court held that those procedures were "fatally deficient," in that they too placed the "burden of proof" on the plaintiff to commence a "civil suit," and not simply request, to recover the property. 460 F.2d at 113, 115-16.

As a follow-up to *McClendon*, the *Butler* and *Alexandre* courts held that, although the post-*McClendon* procedures to secure the return of the property were adequate, *notice* of those procedures arguably was not. *See Alexandre*, 140 F.3d at 413 ("[I]t is certainly understandable that a prisoner might claim that the City . . . continues systematically to mislead arrestees about the procedures for redeeming their property."); *Butler*, 896 F.2d at 700-701, 703 (holding that the defendants "misle[d]" the plaintiff about the "procedures to govern the Police Property Clerk's custody of seized property," adopted after *McClendon*).

None of the above decisions, however, recognized the "contours" of a right relating to the return of property, where a law enforcement agency's officers had confiscated the property pursuant to a prior *court order*. *Anderson*, 483 U.S. at 640. Indeed, those decisions are

distinguishable, in that they involved the refusal to return property, independently confiscated by the officers and not by order of any court. In *Razzano*—arguably, the decision that is the most relevant, in terms of this action—the district court declined to apply its reasoning to any situation in which a court originally ordered the confiscation of the property sought to be returned.[14]

This distinction is important, as it informs the conclusion that a "reasonable officer" in this action would not have believed, based on those decisions, that his refusal to return Dudek's longarms without a court order departed from "clearly established" law. On the contrary, an officer could have reasonably believed that, because the Family Court had ordered that the longarms be confiscated, he was not allowed to return the longarms, until a different court with actual authority ordered that they be returned. It was incorrect, but not unreasonable, for an officer to have believed, as Defendants do, that an "independent determination that [Dudek] was entitled to the return of his longarms" would amount to an "impermissibl[e] review[]" of the Order by a law enforcement agency, rather than another court. (Defs. Br., at 10.) Even assuming an officer should have believed that he was allowed to reverse, without direction from another court, what the Family Court had already directed as far as retaining the longarms, he

---

[14]    Dudek's allegation that "a copy of the *Razzano* decision was include [sic] with the demand for the return of the longarms" (Pl. Br., at 16), thus alerting Sheriff Sposato and Deputy Sheriff Mastropieri that their refusal to do so was unlawful, is irrelevant. The standard for qualified immunity is "objective," and not "subjective," reasonableness, "as measured by reference to clearly established law" about which a "reasonably competent public official should know." *Harlow*, 457 U.S. at 816-19. The fact that a specific officer should have known about the *Razzano* decision is irrelevant to the issue of whether a "reasonable officer" should have known about it. On its own, the *Razzano* decision was insufficient to constitute "clearly established" law. *See Wilson v. Layne*, 526 U.S. 603, 616 (1999) (Rehnquist, C.J.) (holding that parties that "have only identified two unpublished District Court decisions" "cannot 'clearly establish'" that a constitutional right was violated). At any rate, the *Razzano* decision would not have led a "reasonable officer" to believe that the refusal to return Dudek's longarms was against "clearly established" law, because, as discussed above, the decision is distinguishable for qualified immunity purposes.

had no reason to believe that his refusal to do so would run afoul of the Constitution. *See*, *e.g.*, 10 N.Y. Prac., N.Y. Family Ct. Prac. § 12:17 (2012) ("[The] Family Court [in *Aloi II*] had initially issued a temporary order of protection and a § 842-a order, but both had been withdrawn as part of a negotiated settlement. In the absence of Family Court jurisdiction, the respondent's only recourse was a new petition in Supreme Court (*the Sheriff understandably refused to return the firearms in the absence of a court order*)[.]") (emphasis added).

This Circuit's "pre-existing law" therefore did not suffice to alert a "reasonable officer" that, in conditionally refusing to return Dudek's longarms, he had deprived Dudek of procedural due process. *Anderson*, 483 U.S. at 640-41. Nor did the law of the other Circuits render the constitutional deprivation, if any, "apparent" to such an officer. *Id.* This Court has not found, and the parties have not pointed to, any decisions outside the Second Circuit that "clearly established" a right resembling the one allegedly violated in this action.

Accordingly, this Court dismisses *with* prejudice the monetary relief portion of the personal-capacity claim, based on qualified immunity.

### 3. Timeliness

As an alternative basis for dismissing the Section 1983 claim against the County and the individual officers, Defendants argue that the applicable three-year statute of limitations for this claim started to accrue on January 6, 2009, when the Family Court vacated the Order; and therefore this claim, which Dudek did not assert until March 12, 2012, is untimely. (Defs. Br., at 17-18.) Dudek argues that this claim is timely, because the statute of limitations had only been accruing since January 20, 2012, when he made the request to Sheriff Sposato and Deputy Sheriff Mastropieri for the return of his longarms. (Pl. Br., at 24.)

Indeed, the applicable statute of limitations for a Section 1983 claim is the particular state's "general or residual statute of limitations governing personal injury actions," which, in

New York, is three years. *Owens v. Okure*, 488 U.S. 235, 245, 251 (1989) (Marshall, J.). Although New York's three-year statute of limitations for personal injury actions applies to the claim, "federal law determines when a federal claim accrues." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). According to the Second Circuit, the claim ordinarily accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980) (quotations omitted).

However, "[w]here no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." *Id.* at 192-93. Along those lines, the accrual of the claim may be delayed by the fact that it involves an injury that not-so-clearly stems from a continuing violation, founded on (i) a municipality's "policy or custom," *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[A] cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'"); or (ii) a failure to act, *see Remigio v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *8-11 (S.D.N.Y. Aug. 12, 2005) (Dolinger, Mag. J.) (holding that, besides the fact that the "procedural due process claim" possibly arises from a "policy or practice," the accrual of the claim should also be delayed, because it involves the "continuing ill effects" of a "daily failure of defendants to conduct a hearing" to return the plaintiff's car, where "each day's due-process injury was similar to that of the day before and the day after, part of a continuous injury that was not simply a consequence of the initial seizure"). The reason for such a delay is that, after only a "single act" that allegedly infringes on his constitutional rights, a plaintiff could not possibly "know[] or ha[ve] reason to

know of" an injury that arises from an ongoing policy or constitutes a persistent failure to act. *Singleton*, 632 F.2d at 191-92.

In this action, Dudek satisfies either basis for delaying the accrual of this claim. First, Dudek's claim against the County, the sole remaining Defendant from whom Dudek may collect any money, alleges an injury arising from a policy, pursuant to which the Sheriff's Department and its officers refused to return firearms confiscated by court order, without another court order directing their return. As discussed *supra* at Section II.B.1.ii, the sufficiency of this claim is based on the allegation that Dudek requested the return of his longarms from Sheriff Sposato and Deputy Sheriff Mastropieri on January 20, 2012. Absent the January 20, 2012 request, there would be no basis for inferring that Dudek suffered an injury by operation of the County's alleged policy. In other words, the January 20, 2012 request gives rise to the injury on which the Section 1983 claim relies. Construing the allegations in Dudek's favor, this claim did not accrue until January 20, 2012, and is therefore timely, as it was asserted within three years thereof.

Second, Dudek could not have known, at the time the Order was vacated, that he was suffering a "continuous injury that was not simply a consequence of the initial seizure" based on the Order, but rather the "ill effects" of the "daily failure" by the Sheriff's Department to afford him with adequate process to secure the return of his longarms. *Remigio*, 2005 WL 1950138, at *8, 10. The first day's failure, after the Order was vacated on January 6, 2009, would not have alerted Dudek to such an injury. Only the persistent failure on a daily basis would have brought to light "the defendants' continuing and incrementally increasing unlawful conduct" in depriving Dudek of procedural due process. *Id.* at *10. Again, construing the allegations in Dudek's favor, the constitutional deprivation, on which the Section 1983 claim relies, was not wholly

apparent until the department disregarded his January 20, 2012 request, and, within the three years that followed, Dudek timely asserted this claim.[15]

Accordingly, this Court declines to dismiss the Section 1983 claim, based on the applicable three-year statute of limitations.

### C.  Supplemental State Law Claims

With respect to Dudek's state law claims of conversion and replevin, Defendants argue that those claims are untimely, because the applicable three-year statute of limitations for those claims also began running as of January 6, 2009,[16] the day that the Order was vacated, and expired before Dudek ever asserted them.  (Defs. Br., at 20-21.)  In his opposition brief, Dudek addresses Defendants' argument about the "three year statute of limitations for a section 1983 claim," but not their related argument about the timeliness of the conversion and replevin claims. (Pl. Br., at 24.)

Dudek's failure to address the timeliness argument regarding those claims is reason alone to deem all objections thereto abandoned.  *See supra* discussion at Section II.B.1.i (collecting cases).  In his brief opposing Defendants' initial motion to dismiss back in 2012, however, Dudek *did* address the same argument regarding those claims, as they appeared in the original complaint.  (Dkt. No. 8, at 9-10.)  As such, this Court declines to resolve the issue of timeliness

---

[15]    Potentially, after discovery, the record will reflect that Dudek "realize[d]," far sooner than January 20, 2012, that (i) the County had promulgated a no-return policy for the Sheriff's Department; or (ii) the department's inaction in returning his longarms, once the Order had been lifted, amounted to a persistent failure to provide adequate process.  *Singleton*, 632 F.2d at 192. Defendants may reargue, at that point, that any injury that Dudek allegedly suffered was "apparent" more than three years prior to his asserting the Section 1983 claim, and that this claim was thus time-barred.  *Id.* at 193.  At this point, however, there is no support for such an argument.

[16]    Defendants' initial brief says "January 5, 2009," but this Court assumes that they intended to say January 6, 2009, which is when the Family Court vacated the Order.

based solely on Dudek's abandonment of all objections in his current opposition brief. *See Indep. Asset Mgmt. LLC v. Zanger*, 538 F. Supp. 2d 704, 709 n.3 (S.D.N.Y. 2008) (Rakoff, J.) ("Although in its response to the motion to dismiss the amended complaint [the plaintiff] failed to specifically address [the defendant's] arguments supporting dismissal of [the plaintiff's] amended [state law claim], the Court declines to treat [the plaintiff's] opposition to the second motion to dismiss as waived. [The defendant] made the same basic arguments relating to the [state law claim] in both its first and second motions, and [the plaintiff] clearly responded to the first motion.").

Under New York law, the applicable statute of limitations for a conversion or replevin claim is three years. N.Y. C.P.L.R. § 214(3). Where the claim involves a plaintiff's property, whose possession by a defendant is "originally lawful" but later becomes a "wrongful withholding," a demand that the property be returned is a procedural "condition precedent" to asserting the claim. *Berman v. Goldsmith*, 529 N.Y.S.2d 115, 116 (2d Dep't 1988); *Al-Roc Prods. Corp. v. Union Dime Sav. Bank*, 425 N.Y.S.2d 525, 526 (2d Dep't 1980). The claim starts to accrue, as soon as a plaintiff has the "right to make the demand."[17] N.Y. C.P.L.R. § 206(a) ("[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete[.]"); *see also Berman*, 529 N.Y.S.2d at 116 (same); *Al-Roc*, 425 N.Y.S.2d at 526 (same).

---

[17]     The above rule about accrual is distinguishable from the rule that applies to a conversion or replevin claim against a "good faith purchaser." Where a purchaser acting in good faith has obtained a plaintiff's property, *already* wrongfully withheld by a third-party through theft, a demand for the return of the property is a "substantive element of the cause of action" against the purchaser, and *not* a "procedural condition precedent." As a result, the "right to make the demand" is irrelevant to the accrual of the claim against the purchaser. *Solomon R. Guggenheim Found. v. Lubell*, 550 N.Y.S.2d 618, 620 (1st Dep't 1990).

In *Smith v. Scott*, 740 N.Y.S.2d 425 (2d Dep't 2002), for instance, the state court found that the possession of the plaintiff's car was "initially lawful," based on the fact that the officers of the town police department had arrested his son. The possession became unlawful 60 days later, when the officers continued to impound the car without instituting a forfeiture proceeding. The plaintiff, at that point, had the "right to demand" that the car be returned, and therefore his replevin claim began accruing. *Id.* at 426, 431.

Similarly, in this action, the Sheriff's Department and its officers lawfully seized and retained Dudek's longarms between November 17, 2008 and January 6, 2009, based on the Order. On January 6, 2009, the Family Court vacated the Order; but the department continued to retain, and refused to subsequently return, the longarms, even though it no longer had a legal basis for doing so. The fact that Dudek had the "right to demand" that the longarms be returned to him also meant that he had the right to bring the conversion and replevin claims beginning on January 6, 2009. Indeed, those claims turn on the department's retention of, and refusal to return, the longarms as of that date. Dudek should have, but did not, assert those claims before January 6, 2012. Those claims are now time-barred.

Accordingly, this Court dismisses *with* prejudice the conversion and replevin claims, based on the applicable three-year statute of limitations.[18]

III.    Conclusion

This Court (i) declines to dismiss, and allows discovery on, the *Monell* claim against the County and the declaratory and injunctive relief portions of the personal-capacity claim against Sheriff Sposato and Deputy Sheriff Mastropieri; and (ii) dismisses *with* prejudice all other

---

[18]    Because this Court dismisses the conversion and replevin claims as time-barred, it does not address Defendants' alternative arguments for dismissal, based on the failure to serve a timely notice of claim and the *laches* defense. (Defs. Br., at 19-21.)

claims, except for the declaratory and injunctive relief portions of the personal-capacity claim against Deputy Sheriffs Goropeuschek, Lee, Gorey, and Linn, which is dismissed *without* prejudice.  The Clerk of the Court is directed to terminate, as parties to this action, the Sheriff's Department and Deputy Sheriffs Goropeuschek, Lee, Gorey, and Linn.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: November 19, 2013
        Brooklyn, New York